nce Company, 2120548, and Adarko E&P Onshore v. California Union Insurance Company, 2120548. We'll hear first from Mr. York. Were you representing Anadarko back in 2007? No, Your Honor, I was not. My first association with Anadarko actually was as a co-party in the Deepwater Horizon litigation, where I was actually representing Halliburton, which I know the Court is awfully familiar with the appeals arising from that litigation as well. May it please the Court. Good morning, Your Honors. My name is Alan York, and I am this morning representing the appellant in this case, Anadarko E&P Onshore. As the Court is aware, there is a central and principal issue that is presented to this Court today, and that is whether the service of suit provision and the two relevant insurance policies that were sued upon by Anadarko required remand of this case to the State District Court where it was originally filed by Anadarko. This analysis of this question is largely driven by two 1991 precedents from this Court, the Rose City v. Nutmeg case and the McDermott v. Lloyds case. Rose City came first in time, and in that case, the Court held that a service of suit provision, virtually identical to the one included in these policies, mandated that the jurisdiction where the plaintiff decided to file suit was the jurisdiction and that the defendant had waived its right to remove that case to Federal District Court. A few months later, the Court in McDermott considered a variation on that theme and considered a case in which the insurance policy included both a service of suit provision and an arbitration provision. Well, we are quite familiar with those, and I think the conjunction of these three agreements is a somewhat different situation than either of those cases presents. And therefore, what was the purpose of the 2007 agreement? The purpose of the 2007 agreement, Judge Jones, was to resolve a subset of cases existing under the two policies. And specifically, the 2007 agreement dealt with benzene, silica and asbestos cases. They called them, I believe, the ASB cases. Right? So that was the purpose of settling that particular settlement agreement, was to settle those cases. And there was an over, but these come out of CGL policies, right? That's correct. Okay. And so there presumably could have been other ongoing CGL-type, you know, some accident or a truck crashing into something that were not comprehended in the 2007 agreement. That's precisely correct, Judge Jones. And in fact, the best evidence of that was the 2017 addendum to the 2007 agreement. Because in 2014, there was a new set of cases that were filed. We refer to them as the Louisiana Parish lawsuits. Those were a separate set of environmental cases, and the parties entered into a 2017 addendum. The terms of that 2017 addendum are important. Before you leave the 2007, you have tried to limit what you need to do, the effect of the 2007. Part of 2007, let me make sure, is private action claims, private action claims should mean those pending or future lawsuits, portions the same, brought in the United States seeking damages against your client for property damage, bodily injury, sickness, et cetera, exposure to environmental conditions stemming from your operations. That's not limited. It's all environmental claims. Isn't that what we're dealing with here? Actually, Judge Selfick, it's not all environmental claims. And by the terms of the 2007 agreement, the parties specifically separately defined and accepted a class of claims that they defined on page 7 of the 2007 agreement as environmental claims. And those referred to specific environmental claims that were accepted from paragraph E, so the parties in paragraph E to the 2007 agreement separately defined environmental claims and accepted them from the definition of future litigation cost as private litigation claims. In 2007, this is why the 2017 agreement addendum becomes important, because by the terms of the 2017 addendum, the parties did exactly the same thing. They took a separate universe of claims, defined them as the Louisiana Parish lawsuits, and then treated them differently. And what they said in the 2017 addendum was that for a portion of these claims, the defense costs were pre-2016, they made those claims subject to the 2007 agreement. In other words, sort of backed those claims into the terms of the 2007 agreement. But as importantly, the parties expressly accepted post-2016 future litigation costs related to those Louisiana Parish lawsuits. And within the terms of that 2017 addendum and exception, specifically reserved Anadarko's right to pursue those claims and said that Anadarko expressly reserves and does not waive the right to demand payment or reimbursement from Century of all defense costs and indemnity costs for the Louisiana Parish lawsuits not expressly included in the definition of past defense costs included in this addendum. So just like they did in the 2017 agreement, 2007 agreement, in the 2017 addendum they separately defined this universe of lawsuits and treated them differently. Let's go back to 2007 for a second, because paragraph D, private action claims, is what Judge Southwick quoted, for brought in the U.S., seeking damages for property damage result allegedly caused from exposure to environmental conditions stemming from Anadarko's facilities prior to January 1, 1986. Now, that paragraph does not seem to be limited to, first of all, it talks about environmental conditions, whereas paragraph E talks about environmental claims at four particular sites, none of which is in Louisiana. Yes, Your Honor, but if the Court will look at paragraph K, which is the definition of future defense costs. 2007? I'm sorry, yes, Your Honor, the 2007 agreement. I believe this is ... I'm sorry, I think there are ... Future defense costs there is defined as including the asbestos, silica and benzene claims or private action claims. The private action claims, if you would like to look at the definition of private action claims in paragraph D, but then look to paragraph E, and I'm sorry for the confusion of having to track this through, but it's important to determining what the intent of the parties was. Very important. And so paragraph E defines environmental claims as claims other than private action claims. So it is by paragraph E that the parties accepted this subset of claims from private action claims, which would be necessary to reach the definition of future defense claims. Now it's also important that there is other indicia in the record that this is exactly how the parties intended to treat this. The Court will note that under the 2007 agreement, the agreement was that Century would pay these defense costs at a rate of 18 percent. It's also important to note that under the 2017 addendum, the parties never said we're going to pay these claims according to the terms of the 2007 agreement. They entered into a separate agreement on separate payment terms for these Louisiana Parish lawsuits, whereby in fact they were paying the claims at about 80 percent. Additionally, as we've cited to in the record, there was no indication anywhere in the communications between the parties that these claims were covered by the 2007 agreement, by the terms of the 2007 agreement. Instead, the only way to properly interpret the intent of the parties, which is ultimately this party's goal, obviously, this Court's goal, is to see that what they were doing was taking a separate universe of claims, bifurcating that, backing a portion of that into the 2007, terms of the 2007 agreement, but reserving Anadarko's rights regarding the accepted claims. That's also evident specifically by the terms of the 2007 agreement itself. And I would wish it would have been different years other than 2000 and 2017, because I keep getting those confused. But in paragraph 2018, the parties, excuse me, paragraph 18 of 2007 agreement, the parties specifically said, this agreement is without precedential value and shall not be used in any proceeding or hearing to create, prove, interpret, or affect in any way any other agreement or any insurance policy, including but not limited to the policies listed in Exhibit A. So the parties, by their specific terms in 2007, were saying, we're going to create this system where we're going to settle a subset of claims, and this is not going to affect Anadarko's rights under the policies. And that's exactly consistent. It's certainly clear to me that 2007 is looking to the future as well. It is dealing with certain claims, how broadly those claims are dealt with. I imagine your friends on the other side will have a disagreement. But it's not as if this was a closed agreement once it was entered. It's going to have future applications. And our determination is whether those future applications include these suits in Louisiana parishes. I mean, is that a fair set of statements that I've made? I think that's . . . I think it's absolutely right, Judge Salford. So it's not . . . we don't take it off the table. We've just got to figure out if we are at the right location for this to apply in Louisiana. Absolutely correct. And I think, again, that's one of the reasons that it's so important to look through the specific terms of what the parties did in 2017. As you correctly note, in 2007, they're trying to look forward, but they're not trying specifically to cover all claims under the policies. They are specifically saying it covers certain claims, and by definition that would mean that there are certain claims under the policies that are not covered by the 2007 agreement. That may be the case, but you go to 2017 and it says all terms of the agreement in caps, which means 2007, except as otherwise provided, are incorporated herein by reference and shall apply. All terms of the agreement shall remain in full effect except as otherwise provided in this addendum. And so my question is whether this incorporation language includes the arbitration, because what we're ultimately getting to is the impact of the arbitration provision in the 2007 agreement, or better put for you, why doesn't it include that? Absolutely, Judge Jones. I would say that, again, referring back to the bifurcation of these Louisiana Parish lawsuit claims, if Anadarko was suing related to certain claims that were settled by the 2017 addendum and backed into the 2007 agreement, those claims would be subject to the arbitration provision. But what the part that is, you already read the language, Judge Jones, it says except as otherwise provided in this addendum. And that language is important because in paragraph 3 on page 4 of the 2017 addendum, the parties specifically agreed in paragraph 3, Anadarko does not release or discharge century from any claim, demand, cause or action under the policies based on any and all theories of insurance coverage, including bodily injury, et cetera. And at the end of that paragraph, Anadarko expressly reserves and does not waive the right to demand payment or reimbursement from century indemnity of all defense costs. So again, looking at what the argument is that somehow the 2007 agreement supplanted the terms of the policies with regard to the things that were within the terms of that agreement. Here, Anadarko is reserving its rights, not under the 2007 agreement, but under the policies. Again, consistent . . . In the language, you're saying the million and a half dollars that is the part or whatever the amount was that is the settlement that led to the 2017 agreement, we're paying that. But what's not being released by that is the following. And all I see that's not being . . . Well, not all I see. All this agreement is saying is that we're dealing with past defense costs in this payment that's being made at the time of this 2017 agreement. Is that correct? The million and a half is defense costs? Rough numbers, yes, Judge Salfik. That amount was being paid for those. Like round numbers. But whatever that amount was, it's got some pennies involved too, I bet. And then this whole list of things, it seems to me that you parties are agreeing there's a lot of things that are going to happen in the future. We're going to have some indemnity. We're going to be seeking, Anadarko is going to be seeking from an insurance company, potentially, when we settle lawsuits against us or otherwise, indemnifying us for what we settle, the defense costs in the usual sense of that word, not your all caps defense costs. And all I see, you think the word, you have argued to us that the word litigation in that phrase is magic. But I see litigation in that phrase as nothing more than a litigation that Anadarko was involved with against plaintiffs against them. Isn't that a fair reading of that? And Judge Salfik, I'm sorry, I've gotten a bit lost in which agreement you're referring to. Well, 2017, the notwithstanding clause is what I'm talking about. And you have mentioned in your briefs, opening and reply, that this litigation word is somehow indicative that we're not talking about arbitration anymore. But all I see in that word is talking about all the ways in which Anadarko itself could become liable because of who is suing them or who they're settling with or otherwise. And it's not talking about the litigation between them and you and the insurance company. And, Your Honor, I think that the reference to the litigation word is but a small part of the larger context that establishes how these claims were accepted and maintained under the policies. And I would say that one of the most important words I would say there is that Anadarko is reserving its rights under the policies, not under the 2007 agreement. The way that the district court looked at this and the way that Century is looking at this is, again, somehow the 2007 agreement supplanted the terms of the policies and made everything subject to the terms of that agreement. And that is not true to the intent of the parties and is not true to the words of the agreements. I mean, as an example, had a, had some Anadarko truck collided with another truck somewhere, there couldn't be no possible argument that future defense costs were, I think, no longer a possible argument that that involved future defense costs comprehended by 2007. I just don't see that. I think that's correct. And may I take one second to respond to your question, Your Honor? Yes, sir. I think that's absolutely correct. And I think it's also important to note that by the terms of the 2007 agreement, the parties reserved the right to amend that agreement by a subsequent written agreement, which is exactly what they did in 2017 and accepted these claims from the terms of the 2007 agreement, meaning that the arbitration clause does not apply and that there is only one form selection clause, the service of supervision, which required remand. All right. Thank you. We'll hear next from Mr. McCormick. So I take it the insurance companies are on the hook and not challenging the indemnity cost? So, Your Honor, the insurance companies recognize, and by the way, Aiden and McCormick, thank you. I'm sorry. No, no, it's okay. They recognize that the 2007 settlement agreement is in place and that the 2007 settlement agreement has certain aspects of it that require them to pay a share of future costs, a defined term, for private action claims. And I think one of the — it's not really as complicated, I think, as Anadarko likes to make it. I think one of the ways to look at this case is just to step back and remember that in 1979, in 1980, there was insurance contracts issued, and the parties got into a dispute, a very significant dispute. I mean, this dispute evolved into two major litigations, one in Texas and one in Pennsylvania, and you can find those on page — Five million asbestos claims. Yes. And there is — on 1302 of the record, you can find sites to those litigations. So the parties got embroiled in a very big dispute, and the parties did what I think all courts encouraged them to do, which was enter into a settlement agreement. And I think the settlement agreement has three key aspects, at least, some of which we've discussed but the Court should really focus on. The 2007 agreement says — has an express reference to the very insurance contracts in the complaint here, right? So it's not like a vague situation. You can find that on 1331 of the record. It also has, as we know, an arbitration clause, and it's not just any arbitration clause. It's a super broad arbitration clause. It says that it applies to future defense costs, and it also applies to any dispute under the agreement. And litigation is not permitted, it's prohibited, shall be settled by arbitration. So you have two aspects right out of the box in this 2007 settlement agreement. You have the very insurance contracts the parties are fighting about here in that agreement, and you have a mandatory arbitration provision that the parties very commercially — . . . So you're saying that if, after 2007, an Anadarko truck had collided with somebody else and there was an ordinary CJL claim arising out of that, that that would involve future defense costs under the 2007 agreement. Is that right? That's correct, Your Honor. Even though everything else in the 2007 agreement appears to be directed to asbestos, silica, benzene, and similar environmental type stuff. I would respectfully disagree with that characterization of the 2007 agreement. I think when you read the private action claims . . . I understand that. Private action claims is the only paragraph in that agreement that we are amending the policies as follows in regard to past, present, and future defense costs. Yes, Your Honor, but . . . There had to be a limitation to the 2007 agreement. Otherwise, it would have superseded the entire original policy. That's correct. And there is limitations, and they're actually written on page 1307 of the record. What are those? You can find the exceptions, the only exceptions to private action claims. And there's six exceptions, so let's look at one, just for an example. Number three, lawsuit seeking solely injunctive declaratory or prospective remedial relief and in no count seeking damages. Okay, so let's take an example of something that wouldn't fall in the 2007 agreement. It would be a claim that didn't involve a claim for damages. Okay, so that claim would not fall in the 2007 agreement, and you'd be back to the insurance policies. But there's really, there's no legitimate dispute that these claims don't fall within the 2007 agreement. It's the same policies. It's the exact subject matter of the agreement. There is a murder clause in that 2007 agreement that says, essentially, this is now our agreement. Anything else we had is over with, and we move forward from here. So if you want to know, the question, I think, is, is it possible, Mr. McCormick, that something doesn't fall within the 2007 agreement? I think the answer is yes, that's true. I wouldn't dispute that. But as Judge Lake found, after a careful reading of the contracts, studying the complaints, he found these fall squarely within the 2007 agreement. I think we also need to bear in mind that this is arbitration, right? So scope is for  Let me ask you, before you get too far into the terms of arbitration, how do you respond to the allegation by opposing counsel in briefing, and a little bit here today, that you proceeded for years, not you, but your client proceeded for years, without raising this, the 2017 or 2007 agreement, applying to what we're talking about now, and it sort of was like a discovery at some point, and started to defend your obligations using the 2017 agreement. So I don't think that there's, both sides have had this dispute, obviously, for years, right? It's gone back many years. And there's been countless records of, thankfully, letters that are in the, that are not on the record, between the parties disputing these issues. But there is no, and never has been, any waiver of the right to arbitrate. Well, waiver is a legal term, and it may well not have been waivered, but I guess I'm asking you more of a factual question. If we were, if this is in the record, maybe it's not, of how the responses to the claims being made by Anadarko were handled through the years, that there was no raising of these settlement agreements and the addendum until some period of time had passed, and not this, the sense that perhaps even the insurance companies didn't think this applied is certainly what that is suggesting. So I think that suggestion is false, in respect of the facts, right? The facts are that as soon as this came up, recently, and they made the claim and sued us, we promptly said that wait a second, we have an arbitration provision. And we demanded arbitration, we have an arbitration demand out there. So that is, you know, the... If they caused you on an intermediate step between the, when they sued you and you demanded arbitration, obviously you removed the case to federal court. Correct. Can, and I recognize the first proposition in your red brief is that diversity jurisdiction exists. I recognize there was an amended notice of removal. I'm looking at the amended notice of removal, and it says Anadarko Petroleum Corporation indirectly owns, and I'm going to come back to indirectly in a second, that's the word I have a question about, 100 percent of Anadarko Consolidated Holdings LLC, which in turn is the sole member of the Anadarko LLC that is the party before us today. What do you mean by indirectly owns? In, as we understand it, obviously Anadarko is probably the better person to answer that question. As we understood it, it has ownership rights and interests. It's a member company. That's my understanding. So who else, what is intervening between the C-Corp that has the indirect ownership? I... And so, and I'm wondering why that's not a problem, because as you point out in your notice of removal, in order to establish diversity jurisdiction and to get into Judge Lake's court in the first place, you have to establish that there's complete diversity. You obviously recognize the diversity of the LLCs is determined by the membership of the LLCs, but if all we know is the indirect ownership of the intermediate, intermediate LLC, then I'm not sure we can understand whether there's complete diversity as to the... So Your Honor, actually, now that I've found my place, I apologize for this, and you may be looking at this on 136 of the record, Anadarko Consolidated Holdings LLC is Anadarko's sole member. We know that. That I got. And it's 100% indirectly owned by Anadarko Petroleum. I don't know that the word indirectly has any meaning because it's 100% owned, so to me it's 100% ownership, and it's a Delaware corporation. Well, it could matter if, in fact, the indirect ownership is run through other corporations that have other places of business or other headquarters. Anadarko never raised that in any of its papers, Your Honor. Once we filed the supplemental notice and Judge Lake ruled on it, they never said, well, wait a second, you missed an entity. And it would have been, I would have thought, up to them, who did not want the case in federal court, to have given us the facts. Unfortunately, it's up to the party invoking the jurisdiction of the federal court, which obviously is your client. So it's your burden to show that, in fact, that complete diversity exists. That's presumably why you filed the amended notice of removal. But I mean, we did our research and we found nothing. I mean, it's not like we put this paper together. So this is the entire... I mean, I think the word indirectly probably is just not an appropriate word in my mind because it's direct ownership. It's 100 percent. So to me, diversity jurisdiction exists. We presented those papers. Anadarko certainly could have raised its hand and said, wait a second, there's another entity that we didn't know about, and put that in the record before Judge Lake. They didn't do it. Judge Lake did a thorough analysis of it and found that diversity jurisdiction exists, and it was never even raised on appeal. So to me, I think there's no doubt about it. It would be, frankly, a waste of time to go back and examine that further. I'm not sure how my time is doing, but let me see if I can find my place on a couple of points. We were talking about sort of the order of history, policies, coverage litigation, and the 2007 settlement agreement. The 2007 settlement agreement has many important elements, including the merger clause, which in the Quest case, basically, this Court held, makes every other thing prior to it a nullity. We also have, of course, the private claims definition. If you read Anadarko's briefs very carefully, they never really dispute that these are private action claims. They really focus on the 2017 agreement. Before we get there, what about paragraph E that your friend on the other side was raising with us that limits what a private action claim is? The environmental claims definition, Your Honor? It expressly includes, it says environmental claims shall mean claims other than private action claims made against an Anadarko in connection with alleged environmental conditions at the following sites. It's limited to certain specific sites, Your Honor. And so do you think there's no limit on what private action claims means under D insofar as our case is concerned? That's right. Well, let me withdraw that. There is limitations, right? But those are under D private action claims. Here they are. There are six of them. So there are six exceptions. We know that. But you don't see E as being relevant at all? No. There are six exceptions. The six exceptions do not apply to these claims. It's really undisputed in the briefs. What Anadarko really wants you to focus on is the 2017 agreement. But the 2017 agreement isn't an agreement. It's what it says it is, right? It's an addendum. It's an addendum to this agreement. It's not just a wholly new thing. And I think when you look at the 2017 addendum, which is what it is, one of the important things to note is the definition of defense costs, which takes you to Exhibit A. And Exhibit A is a settlement agreement. And 10 years later, there's these defense costs that they're having a fight about. These invoices. So they enter into an addendum and they say, we're going to resolve these invoices. This is on 1676, Your Honor, with the record. We're going to resolve these invoices. And everything else remains in place. It's very specific about that. I think it says it in three places, if I may. Page 1669 of the record, page 1673 of the record, and I think one of Your Honors already noted 1673 of the record, all terms of the agreement, defined 2007 settlement agreement, shall remain in full force and effect except as otherwise provided in this addendum. What is provided in the addendum? We've got this list of invoices. We're fighting over these. Let's get rid of them and settle them and everything else remains in place. And what's one of them? Notwithstanding clauses there, I thought there was more focus than perhaps needed by your friend on the other side this morning to more of a focus on the word litigation. How do you read that clause in paragraph three, notwithstanding clause, that has this list, including but not limited to any claim, demand, et cetera, and it's got the word litigation. What's that about? So I read that as a litigation against Anadarko or? I read that as a savings clause, Your Honor, sort of a whatever we're doing, we're also not throwing away other rights we may have. And there is actually one for Sentry as well. Sentry gets a release and we're just dealing with these defense costs. If we have any other rights, we have them. So if we go back to our first one of our early examples, if a new claim comes in and it doesn't seek damages and therefore doesn't fall by someone against Anadarko for, I mean, I don't know how they're doing. Correct. Well, it's rights and defenses. The parties, you know, can't really use a sort of boilerplate, you know, settlement agreement wording. Whatever we're doing here, we're not waiving any other rights we may have. But as Judge Lakesap said, you can't revive a right that you didn't, that you gave up in the 2007 settlement agreement when you said we will arbitrate these issues, all disputes. Was the $1,000,005 and change paying for attorney's fees and other costs or were there some indemnity payments in there? What was, what was settled in 2017? Exhibit A, defense costs. Invoices. Yes. Actually, parties listed the invoices. Right. But those are all defense costs. That's right. They're not settlement of some lawsuit by landowner Smith. That's correct, Your Honor. The only thing that was settled was what they called past defense costs because time had passed and the future had become the past. And so they carved out defense costs that had passed during the ten years and they said, we're fighting about this. Let's deal with it. You said that litigation in this is, may, or someone suggested that it may refer back to the parish lawsuits. But in fact, it says, I won't start at the beginning of the sentence, but it says, claims, including but not limited to, I'm looking at page 1672, the notwithstanding clause, damages based on any allegations of bad faith, unfair claim practices, or any other act or remission in connection with a handling, litigation, or settlement of claims. That has to refer to century. I think that's fair, Your Honor. And I think that it is a, well, as I called it earlier, it's a saving clause. So if we had a claim that didn't fall within the 2007 agreement. Well, what would you call litigation as opposed to arbitration? Well, if it doesn't fall within the 2007 settlement agreement, there's no arbitration. Right? So I think. So litigation there is inapt or mean? Well, it's inapt here because the 2007 agreements, as Judge Lake found in a careful examination, squarely covers. Except, except, all terms of the addendum, all terms of the agreement are maintained except as they are modified by the addendum. It's just a savings clause. It's just, listen, if we have other rights, you know, you can read it. It's boilerplate. It's just one word after another. It's probably lifted from another settlement agreement. And it was limited only to those Louisiana Parish lawsuits. You know, it's just an, just an offhand allusion to future defense costs shall include, you know, property damage. I mean, that's just offhand in 2007 either, but the whole case turns on it according to you, so. Yeah. No, I think, I think to me, and having spent a lot of time with it, I think it's a pretty clear order of progression. You have insurance contracts. You have a big dispute, two litigations. The parties enter into a very comprehensive settlement that they intend to enforce, and we hope this Court will. And then they have an addendum to deal with a subset of dispute of defense costs in the 2017 agreement. But that is what it says it is. It's an addendum, and therefore it doesn't change the 2007 agreement. And so the real question is, ultimately, as Judge Lake found, are we going to enforce the 2007 agreement? And equally importantly, right, are we going to follow what, you know, FAA encourages us to do? I know about the FAA. Don't. Okay. Please, please don't. What's that? Please don't. So I think really the case fundamentally comes down to, is this private action claims? And if you read Anadarko's briefs carefully, they really don't dispute that. They dance around it and say, we say it is. And Judge Lake went through a careful examination of all the words of the contract and said, these are private action claims. And once you get there, the addendum is dealing with certain defense costs. But it doesn't say in it, we hereby delete the 2007 arbitration agreement. It says we preserve it. It says it in three tact. And the thing that's troubling, Your Honor, I believe to a degree is, well, there's this savings clause, but the savings clause says basically all the rights are preserved. But if you don't have the right, then you can't preserve it, right? You can't magically raise it back up. And that's, I think, you know, at the core of the case. And that is, you know, why we believe that the arbitration should continue to move forward with due dispatch. Any other questions, Your Honor? Nope. Thank you. Thank you for your time. All right. Thank you. Mr. York, rebuttal. Thank you, Judge Jones. May it please the Court. Judge Jones, following up with what exactly you said, what's important in this case are the words that were used by the parties and its discernment of what the intent of the parties was. And we disagree with Century. We don't think it's Anadarko who is making this complicated. This is a straightforward case. Anadarko brought suit under two policies under which its rights were preserved, both under the 2007 agreement and the 2017 addendum. Those two policies included service of suit provisions. And because of this Court's precedence in Nutmeg, the remand should have been granted because Century had no right to remove the case. Now, secondly, the arbitration provision that Century continues to refer to as a broad arbitration provision is not an arbitration provision that says all disputes under the policies will be subject to this arbitration agreement. The arbitration language only applies to topics that are subject of the 2007 agreement. That makes the wording of the 2007 agreement important, including the language that said that the parties reserved the right to amend that agreement in writing, which they did in 2017. And in the 2017 agreement, Anadarko specifically accepted this new universe of claims, from this new universe of claims that was being backed into the 2007 agreement, its future defense costs related to those claims. What would you do with the text that this is in the 2007 agreement that says any controversy or claim concerning this agreement? So if your argument is the scope of this agreement and what it does, you have to take it up with an arbitrator. You may have preserved your payment. You may be able to shift some of your costs to the insurance company. But that's for the arbitrator at the end of the day, because it concerns this agreement, that it's the 2007 agreement preserved by 2017. What do we do with that? And so, Judge Oldham, I would say two things. First, that's putting the cart before the horse, because the primary issue was whether there was a right to remove the case at all. The subject of the scope of the arbitration provision should have been reserved, if at all, for the State district court, because the case could have — should have been remanded there. But secondarily, under the Henry Schein case, the mere fact that the parties have an arbitration agreement that exists in the universe does not necessarily mean that a mere reference to that agreement subjects everything else they have done together to that arbitration agreement and mandates that the scope of the arbitration be determined. The Court has to look at what the scope of the claims that are included in that arbitration agreement are, which draws back to the specific words of the 2007 agreement and, more importantly, the 2017 addendum. And when we look to that 2017 addendum, which, by the way, Century completely ignored in its response to the motion to remand, acted as if the 2017 addendum did not exist. But when we look at that, in order for their argument to be correct, their argument has to be that the Louisiana Parish lawsuits that were settled were subject to the 2007 agreement. But the evidence does not bear that out. And, in fact, it's absolutely contrary to the evidence in this record. First of all, the way that the claims were paid in the 2007 agreement, again, 18 percent, is almost the inverse of how they were paid under the 2017 addendum at 80 percent. As we referenced to the Court earlier, there was no reference in the communications between the parties to the terms of the 2007 agreement, an issue which is properly considered by this Court under the Supreme Court case of Barrow v. Shaver, because we're not seeking to alter the terms of the agreement, simply to explain the circumstances in which it was entered. More importantly, the definition of the Louisiana Parish claims in the 2017 addendum treats them like the definition of the environmental claims in the 2007 agreement, which claims were accepted from the definitions that would subject them to the future defense cost provisions. Therefore, we think the case is simple and clear. These claims were subject to the service of supervision, and remand should have been ordered. We ask that this Court reverse the district court's order and with an instruction to remand the case to the State Court. Okay. Thank you very much.